UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ISRAEL DODD RICHARDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-cv-00188-TWP-KMB |
| | ) |
| KENNY FREEMAN Sheriff Jennings County IN, | ) |
| CODY LOW Deputy Sheriff Jennings County IN, | ) |
| KYLE LEE Deputy Sheriff Jennings County IN, | ) |
| individually and in their official capacities, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Kenny Freeman ("Sheriff Freeman"), Cody Low ("Deputy Low"), and Kyle Lee ("Deputy Lee") (collectively, "Defendants") (Filing No. 62). *Pro se* Plaintiff Israel Dodd Richardson ("Richardson") initiated this lawsuit against Defendants alleging excessive use of force, failure to train, and failure to intervene in violation of his Fourth Amendment rights (Filing No. 34). For the reasons stated below, Defendants' summary judgment motion is **granted**.

I.     **BACKGROUND**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Richardson as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Richardson failed to respond to Defendants' Motion for Summary Judgment, so the facts asserted in that Motion will be deemed admitted by Richardson to the extent they are supported by evidence in the record. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

As of March 5, 2022, Richardson had several active warrants out for his arrest: (1) in Kentucky for fleeing and evading police, third degree assault on a police/probation officer, first degree possession of controlled substance, first degree possession of methamphetamine, resisting arrest, and public intoxication/controlled substance; (2) in Johnson County, Indiana, for Level 5 felony possession of methamphetamine and Level 6 felony unlawful possession of a syringe; and (3) in Bartholomew County, Indiana, for failure to appear for operating a vehicle while intoxicated, and endangering a person with schedule 1 or 2 controlled substances (Filing No. 63-1 at 16:20–17:14).

On March 5, 2022,[1] Deputy Low and Deputy Lee, officers with the Jennings County Sheriff's Office ("JCSO"), were notified by a narcotics detective that a hatchback Ford Focus driven by Richardson was headed northbound on State Road 3 in Jennings County, Indiana (Filing No. 63-2 at 3, Filing No. 63-3 at 3). Both officers were made aware that Richardson had multiple warrants for his arrest. *Id.* Deputy Lee's dash camara was activated.[2] Deputy Low and Deputy Lee positioned their cars across from the location where Richardson was observed so that they would encounter Richardson's vehicle. *Id.* At approximately 2:32 p.m., Richardson's vehicle pulled into the location, and Deputy Low and Deputy Lee pulled behind Richardson's vehicle. *Id.*

Deputy Low, a handler for canine partner Axel, activated his emergency lights to initiate a traffic stop of Richardson's vehicle. *Id.* Richardson came to a stop, but as Deputy Low exited his vehicle, Richardson fled in his car, and a vehicle pursuit began. *Id.*

---

[1] Deputy Low's sworn declaration states that the events at issue occurred on March 5, 2023. However, this appears to be a typo, as the body camera footage indicates these events occurred on March 5, 2022. *See also State of Indiana v. Israel Dodd Richardson*, 40C01-2203-F5-000010 (Ind. Super. Mar. 7, 2022).

[2] Defendants manually filed five .mp4 files containing dash camera and body camera footage (two Exhibit As, and Exhibits B, C, and D) (Filing No. 66). The Court refers to Deputy Low's body camera footage as Filing No. 66-A1; Deputy Lee's dash camera footage as Filing Nos. 66-A2, 66-B, and 66-C; and Deputy Lee's body camera footage as Filing No. 66-D.

Deputy Low and Deputy Lee began pursuing Richardson as he fled (Filing No. 66-A2 at 1:02). Sheriff Freeman joined the pursuit (Filing No. 63-2 at 3). During the pursuit, Richardson threw multiple plastic bags out of his window, which Defendants suspected contained narcotics (Filing No. 63-2 at 1). One of the bags hit Deputy Low's patrol vehicle. *Id.* The bags were later recovered by Deputy Low, and the substance inside tested positive for methamphetamine. *Id.* at 3, 10. During the ensuing six-mile, high-speed pursuit on a hilly road, Richardson ran a stop sign, traveled at approximately fifty to sixty miles per hour, and crossed the center line multiple times. *Id.* at 3.

After approximately five minutes of pursuit, Richardson stopped his vehicle on a country road beside a field (Filing No. 66-B at 2:50–56). Deputy Low and Deputy Lee's body cameras were activated. Defendants, each in their own police vehicles, surrounded Richardson's car. *Id.* at 2:56–3:00. Deputy Low, who was parked directly in front of Richardson's car, exited his vehicle with his canine partner, Axel. *Id.* at 2:59–3:01. Sheriff Freeman also exited his vehicle with an assault-style weapon drawn and aimed at Richardson (Filing No. 34 at 3). Deputy Low drew his firearm, and he and Axel approached the driver's side of Richardson's vehicle (Filing No. 66-C at 0:00–0:05). Deputy Low loudly commanded Richardson and the individual in the passenger seat, Lyric Ewing ("Ewing"), to put their hands up where Deputy Low could see them (Filing No. 63-2 at 4). Ewing complied, but Richardson did not. *Id.*

Deputy Lee walked to the passenger's side door of the vehicle and pulled Ewing out of the vehicle, and the vehicle began to move backwards. *Id.* Deputy Low holstered his firearm, and Sheriff Freeman unsuccessfully attempted to open the driver's side door.[3] *Id.* Deputy Low then commanded Richardson to turn the vehicle off, and Richardson complied. *Id.* Richardson then

---

[3] The driver's side door of Richardson's vehicle could not open, so Richardson could only exit the vehicle by climbing out of the driver's side window or by using the passenger's side door (Filing No. 63-1 at 25–26).

3

lowered his left hand to roll down the window (Filing No. 63-1 at 39:20–40:2). Because Richardson had multiple outstanding warrants, led officers on a pursuit for over five minutes, threw bags of suspected narcotics out of his window, and acted erratically, Deputy Low was concerned that Richardson might be armed with or within reach of a deadly weapon (Filing No. 63-2 at 4). Deputy Low loudly informed Richardson five times that if Richardson did not comply with the commands to keep his hands up, Deputy Low would release Axel. *Id.* But Richardson did not hear the commands (Filing No. 63-1 at 31:22–32:1).

Deputy Lee reached through the passenger's side of the vehicle and grabbed Richardson's right arm to pull him out of the vehicle (Filing No. 63-2 at 4). Richardson testified that Deputy Lee grabbed both of his arms, but that testimony is refuted by the video footage (Filing No. 63-1 at 19:13–14, Filing No. 66-C at 0:28–0:35). Richardson lowered his left arm again from the steering wheel where he had been keeping it (Filing No. 63-2 at 4). Because the driver's side door was inoperable, Richardson began to crawl across the seat to exit out of the passenger's side door (Filing No. 34 at 3). Deputy Low did not know the purpose of Richardson lowering his left arm, and he feared Richardson might be reaching for a weapon (Filing No. 63-2 at 4). Deputy Low lifted Axel and deployed him through the driver's side window to assist in detaining Richardson. *Id.* Axel engaged Richardson on his back for approximately nine seconds until Deputy Low commanded Axel to release his bite, as Deputy Low believed Deputy Lee had gained control of Richardson's arm. Neither Deputy Low nor Axel had any further physical contact with Richardson *Id.*

Deputy Lee did not have control of Richardson (Filing No. 66-C at 0:32–0:41). Once Richardson was out of the vehicle, Deputy Lee attempted to place him in handcuffs, commanding Richardson to "stop" and "give me your f[******] arm." (Filing No. 66-D at 0:09–0:20). Richardson replied "okay" and "you got it," but the video shows Richardson pulling his left arm

4

away from Deputy Lee, placing his right hand on the ground, and using his right hand to push himself off the ground and stand up. *Id.* at 0:09–0:23. When Richardson stood up, Sheriff Freeman began assisting Deputy Lee in gaining control of Richardson, and both officers shoved Richardson to the ground. *Id.* at 0:20–0:25. Deputy Lee then yelled to Richardson, "give me your hand!" to which Richardson said "here," but continued pulling his arm away. *Id.* at 0:30–0:36. Richardson then pulled his arm to the front of his body and yelled "he's biting me again," referring to Axel. *Id.* at 0:33–0:38. The video footage shows that Axel was not biting Richardson at that time. *Id.*

Deputy Low and Sheriff Freeman told Richardson to roll onto his stomach so they could place him in handcuffs, and Richardson complied. *Id.* at 0:43–0:50. After Richardson was handcuffed, Deputy Low held onto Richardson's arm and pulled him into a sitting position. *Id.* at 1:00–1:04. This lawsuit followed.

## II.     LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation

and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

Richardson filed this action alleging excessive use of force, failure to train, and failure to intervene in violation of his Fourth Amendment rights (*see* Filing No. 34). Defendants argue that they are entitled to summary judgment for four reasons: (1) the force used was objectively reasonable, (2) they have qualified immunity, (3) Jennings County was not deliberately indifferent to Richardson's constitutional rights, and (4) Sheriff Freeman did not have reason to know that excessive force was being used (*see* Filing No. 63).

Richardson failed to respond to the summary judgment motion, so facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and

identify disputed facts). "Even where a nonmovant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up). Accordingly, the Court's analysis will focus on Defendants' arguments and whether they have shown they are entitled to summary judgment on each of Richardson's claims.

A.     **No Excessive Force**[4]

"Although police officers may use force to seize another person under appropriate circumstances, the Fourth Amendment protects against the use of excessive force." *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021). "The question whether a particular use of force has crossed the constitutional line is governed by the Fourth Amendment, which prohibits unreasonable seizures." *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015). Courts analyze excessive force cases under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

The Fourth Amendment's "reasonableness" test is "not capable of precise definition or mechanical application." *Id.* at 396 (citation omitted). "'[T]he question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Taylor*, 10 F.4th at 806 (quoting *Graham*, 490 U.S. at 397) (alteration in original). "Such an analysis is inherently fact-dependent, requiring consideration of such factors as (1) the severity of the crime at issue, (2) whether the person posed an immediate threat to the safety of the officers or others, and (3) whether the person was actively

---

[4] The United States Supreme Court has advised lower courts to "think hard, and then think hard again," before addressing both qualified immunity and the merits of underlying claims. *Camreta v. Greene*, 563 U.S. 692, 707 (2011). In this case, the merits question of whether Defendants used excessive force is dispositive not only of Defendants' qualified immunity defense, but also of Richardson's failure to train and failure to intervene claims. The Court therefore finds it appropriate to discuss both the merits of Richardson's claims and qualified immunity.

7

resisting the officers." *Williams v. Ind. State Police Dep't*, 797 F.3d 468, 472–473 (7th Cir. 2015) (citing *Graham*, 490 U.S. at 396). "Whether a particular use of force was objectively reasonable 'is a legal determination rather than a pure question of fact for the jury to decide.'" *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012)).

Where the use of force in question is the use of canine force, courts often weigh a fourth factor: (4) whether the officer warned the subject that he would deploy the dog; the degree of control the officer maintained over the dog; whether the officer terminated the dog bite within a reasonable amount of time; and whether alternative tactics reasonably were available. *Becker v. City of Evansville*, No. 12-cv-182, 2015 U.S. Dist. LEXIS 8414, at *21 (S.D. Ind. Jan. 26, 2015), *aff'd and remanded sub nom. Becker v. Elfreich*, 821 F.3d 920 (7th Cir. 2016) (collecting cases). In addition, the reasonableness of an officer's actions must be assessed from the perspective of a reasonable officer on the scene, not based on the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. That assessment must include a recognition that officers are often forced to make split second judgments in tense, uncertain, and rapidly evolving situations, as to the amount of force necessary in a particular situation. *Id.* at 396–97.

Defendants argue that the *Graham* factors weigh in their favor and supports a finding that, under the circumstances, each Defendant's use of force was objectively reasonable (Filing No. 63 at 12). The Court will examine each officer's use of force.

1. **Deputy Low and Axel**

The first *Graham* factor—the severity of the crime at issue—weighs in favor of Deputy Low. Richardson led police on a high-speed chase through country roads while visibly throwing bags of suspected narcotics out of the car during the chase. Deputy Low was also aware that

Richardson had several active warrants out for his arrest, including third degree assault on a police/probation officer and resisting arrest. These circumstances are sufficiently severe to warrant Deputy Low using Axel to assist in Richardson's arrest. *See Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009) (holding that the use of canine force was objectively reasonable after plaintiff recklessly fled from officers and only surrendered after realizing he could not escape).

The second *Graham* factor—whether the suspect posed an immediate threat to the safety of officers or others—also weighs in favor of Deputy Low. Deputy Low knew that Richardson had multiple warrants out for his arrest, including a warrant for assaulting a police/probation officer. Richardson led officers on a pursuit and once stopped, resisted officers by moving his left arm down towards the driver's side door multiple times. The driver's side door to Richardson's vehicle was inoperable, and Deputy Low had no way of knowing whether Richardson had access to a weapon. Based on twelve years of law enforcement experience, Deputy Low believed "it would not be unusual for a suspect fleeing by vehicle, who was observed discarding narcotics, to have a deadly weapon in his possession." (Filing No. 63-2 at 5). The Court finds it was objectively reasonable for Deputy Low to suspect that Richardson posed a threat to officers and to believe that Richardson may have been reaching for a weapon, which led Deputy Low to deploy Axel through the driver's window of Richardson's vehicle.

The third *Graham* factor—whether the suspect was actively resisting the officers—also weighs in favor of Deputy Low. Richardson led officers on a five-minute pursuit on country roads and only stopped after he realized the police could easily keep up with him and his vehicle was smoking (Filing No. 63-1 at 28:8–11). The designated evidence shows that Richardson failed to obey commands to keep his hands where the officers could see them and kept moving his left hand down towards the driver's side door. Richardson continued to resist arrest even after termination

9

of Axel's bite. He physically resisted arrest until officers were able to handcuff both of his hands. Accordingly, this factor weighs in favor of Deputy Low.

The final *Graham* factor is whether the use of canine force is objectively reasonable. *Becker*, 2015 U.S. Dist. LEXIS 8414, at *21. Richardson claims that Deputy Low used excessive force by releasing Axel without issuing a warning (Filing No. 34 at 4). Richardson's assertion that there was no warning is contradicted by the video footage which shows Deputy Lee audibly making commands and Deputy Low's affidavit that he warned Richardson five times that if he did not comply with directions to keep his hands up in the air, Deputy Low would deploy Axel. Richardson testified that he did not hear the warning, but Richardson does not dispute that such warnings were given. The precise words Deputy Low yelled at Richardson while at the driver's side door are inaudible on the bodycam footage, but Deputy Low affirms in his declaration that he gave the warnings, and Richardson has failed to respond or challenge such assertions. Accordingly, the Court finds that the fourth *Graham* factor weighs in favor of Deputy Low.

The designated evidence shows that Deputy Low maintained control of Axel and continued to supervise Axel throughout the entire engagement. Axel engaged Richardson on his back for approximately nine seconds until Deputy Low commanded Axel to release his bite, as Deputy Low believed Deputy Lee had control of Richardson's arms. Deputy Low then secured Axel and maintained control for the duration of the arrest. After terminating Axel's bite, neither Deputy Low nor Axel had any further contact with Richardson.

The designated evidence shows that Deputy Low terminated the bite within a reasonable amount of time. The bite lasted only nine seconds, and Deputy Low terminated the bite as soon as Deputy Lee had a hold of Richardson outside of the vehicle. *Cf. Edwards v. Shanley*, 666 F.3d 1289, 1296 (11th Cir. 2012) (holding that an officer allowing the canine partner to bite a suspect

10

pleading for surrender and stretched prone for five to seven minutes constituted excessive force). In addition, alternative tactics were limited, as the driver's side door was inoperable and Richardson disobeyed Deputy Low's commands by moving his left hand towards the driver's side door. The officers were reasonably concerned, based on his criminal history, that Richardson might have had a weapon, and Richardson appeared to resist arrest. Under these circumstances, Deputy Low's options were severely limited, and his actions were objectively reasonable. *See Williams*, 797 F.3d at 475 (stating that under the reasonableness standard of the Fourth Amendment, it was reasonable for police to move quickly "if delay would gravely endanger their lives or the lives of others," even if the actions proved with the benefit of hindsight to be a mistake).

All *Graham* factors weigh in favor of Deputy Low's use of Axel. Accordingly, Deputy Low's use of Axel was not objectively unreasonable, and summary judgment is **granted** as to Richardson's excessive force claim against Deputy Low.

### 2. Deputy Lee and Sheriff Freeman

Richardson alleges that Deputy Lee and Sheriff Freeman used excessive force by "pummeling the face down surrendered [P]laintiff with knees and hands." (Filing No. 34 at 6). Defendants argue that Richardson's excessive force claims against Deputy Lee and Sheriff Freeman fail as a matter of law because they used objectively reasonable force to place Richardson in handcuffs (Filing No. 63 at 15). The Court agrees with Defendants.

The *Graham* factors weigh in favor of Deputy Lee. The crime at issue was severe, as Richardson had an active warrant for assaulting a police/probation officer, and he posed an immediate threat to Defendants' safety as he led them on a five-minute vehicle pursuit through country roads. When Deputy Lee made contact with Richardson, he was actively resisting arrest by wresting his arms away from Deputy Lee and attempting to stand up and flee. Although Deputy

11

Lee used his body weight to place Richardson in handcuffs, he did so only after Richardson failed to comply with commands to produce his hands and to stop resisting. The body camera footage shows Richardson wresting his arms away from Deputy Lee and placing his right hand on the ground to propel himself up into a standing position and to potentially flee. While Richardson said "okay" and told Deputy Lee that he had Richardson's hands, these statements were accompanied by Richardson struggling to pull his hands away from Deputy Lee. The body camera footage also contradicts Richardson's allegations that he was "pummeled" with knees. Rather, Deputy Lee is shown using his body weight to pull Richardson to the ground after he attempted to stand up and potentially flee. Applying the relevant factors, no reasonable jury could find that Deputy Lee used excessive force. *See Duran v. Sirgedas*, 240 F. App'x 104, 118 (7th Cir. 2007) (holding that an officer did not use excessive force by striking the suspect in the leg with a baton and hitting them in the head with a closed fist when they fled arrest and then struggled with officers).

      Likewise, Richardson's excessive force claims against Sheriff Freeman fail. The body camera footage shows that Sheriff Freeman only used force against Richardson to hold Richardson's right arm and help pull him to the ground after Richardson planted his right arm on the ground and stood up in an apparent attempt to flee. Sheriff Freeman did not use excessive force by aiding Deputy Lee in gaining control of Richardson after Richardson began resisting arrest. *See Smith v. Ball State Univ.*, 295 F.3d 763, 770–71 (7th Cir. 2002) (finding reasonable force where officer tried to use a "knee strike" on a diabetic driver who appeared to be struggling with other officers extracting driver from car using arm-lock). The Seventh Circuit has explained that considerable leeway is given to a law enforcement officer's assessment about the appropriate use of force in dangerous situations. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 724–25. Considering the totality of circumstances, no reasonable trier of fact could find that either Deputy Lee or Sheriff

12

Freeman used excessive force on Richardson. Accordingly, Richardson's excessive force claims against Deputy Lee and Sheriff Freeman fail, and summary judgment is **granted** on these claims.

**B.      Qualified Immunity**

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott*, 705 F.3d at 713 (7th Cir. 2013). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 (1987)). To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Here, the Court need look no further than the first element of the analysis—whether the facts make out a constitutional violation. As noted above, Defendants' conduct did not amount to a constitutional violation. None of the Defendants used excessive force during the arrest of Richardson. All force used was objectively reasonable given the circumstances. Consequently, Richardson's claims fail to overcome Defendants' invocation of qualified immunity on the first

element. Richardson's claims against Defendants in their personal capacities therefore fail and Defendants' Motion for Summary Judgment is **granted** for these claims.

C.     <u>Failure to Train</u>

Richardson alleges that Sheriff Freeman failed to train Deputy Low and Axel in suspect apprehension, leading to a violation of his Fourth Amendment rights (Filing No. 34 at 5). A claim against Sheriff Freeman in his official capacity is treated as a suit against the entity he represents. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). Richardson's failure to train claim is therefore a *Monell* claim against Jennings County.[5] Defendants argue that Richardson cannot show that Jennings County was deliberately indifferent to his constitutional rights (Filing No. 63 at 19). The Court agrees.

"The Supreme Court held in *Monell* that plaintiffs may sue municipalities under 42 U.S.C. § 1983 when their actions violate the Constitution." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020) (citing *Monell*, 436 U.S. 658). "In order to succeed on a *Monell* claim, a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Id.* (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)). However, "[a]s a threshold matter plaintiffs must demonstrate that the policy at issue violates their constitutional rights." *Id.*

---

[5] Sheriff's offices are not suable entities under Section 1983. *See Riley v. Lake Cnty.*, No. 17-cv-368, 2018 WL 3239732, at *3 (N.D. Ind. July 3, 2018) (collecting cases finding that under Indiana law, sheriff's departments are not suable entities); *Beiler v. Jay Cnty. Sheriff's Office*, No. 11-cv-380, 2012 WL 2880563, at *2 (N.D. Ind. July 13, 2012) (noting that "under Indiana law, a 'sheriff's department' has no separate corporate existence and is therefore not a suable entity"). The proper municipal defendant is therefore Jennings County.

The Supreme Court in *City of Canton v. Harris* held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. 378, 388 (1989). But a municipality may only be liable under Section 1983 for constitutional violations caused by the municipality itself or through its own policy or custom. *Monell*, 436 U.S. at 694. "Proof of deliberate indifference requires more than '[a] showing of simple or even heightened negligence.'" *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (quoting *Brown*, 520 U.S. at 407) (alteration in original). Deliberate indifference may arise in either of two circumstances: (1) "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the deficiency exhibits deliberate indifference on the part of municipal policymakers, *id.* at 390, or (2) when a repeated pattern of constitutional violations makes "the need for further training . . . plainly obvious to the city policymakers." *Id.* at n.10.

Richardson has not shown that a violation of his constitutional rights occurred, which is a threshold matter to succeed on a *Monell* claim. *Hall*, 953 F.3d at 950; *see also Wang v. City of Indianapolis*, No. 24-2664, 2025 U.S. App. LEXIS 7888, at *16 (7th Cir. Apr. 3, 2025) ("[T]here is no municipal liability under *Monell* without an underlying constitutional violation."). In addition, Richardson fails to identify any policy or custom which deprived him of his constitutional rights.

Moreover, even if Deputy Low's use of Axel caused a violation of Richardson's rights, a single instance of misconduct is not enough to succeed on a *Monell* claim. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) ("To prove an official policy, custom, or practice within the meaning of *Monell*, [plaintiff] must show more than the deficiencies specific to his own

15

experience of course."); *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) ("[L]iability requires conduct in 'more than one instance.'") (quoting *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988)).

Because Richardson failed to identify any policy or custom which deprived him of his rights and because no underlying constitutional violation occurred, Richardson's failure to train claim fails, and summary judgment is **granted** as to this claim.

### D.     Failure to Intervene

Richardson claims that Sheriff Freeman "failed to stop Low from using excessive force to wit putting his canine Axel through a window to bite the unarmed, surrendered, complying Plaintiff." (Filing No. 34 at 5-6). Defendants argue that Richardson's claim fails as a matter of law because the force used by Deputy Low was reasonable, and therefore there was no requirement or necessity to intervene (Filing No. 63 at 22). In addition, Sheriff Freeman argues he had no opportunity to intervene, as Deputy Low's release of Axel was a split-second decision.

"An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis omitted). "In sum, an officer must know that a citizen's rights are being infringed, and he must have a 'realistic opportunity' to intervene." *Doxtator v. O'Brien*, 39 F.4th 852, 864–65 (7th Cir. 2022).

The designated evidence shows that no excessive force was used. Sheriff Freeman therefore had no reason to know that excessive force was being used. The Court has found that no

16

other violation of Richardson's constitutional rights occurred. Consequently, Richardson's failure to intervene claim fails as a matter of law. *See Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) ("Though legally distinct, the fate of plaintiff's failure to intervene claim is closely linked to that of her excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene."). Summary judgment is therefore **granted** as to Richardson's failure to intervene claim.

### IV.    CONCLUSION

For the reasons explained above, Defendants are entitled to summary judgment on all of Richardson's claims. Accordingly, Defendants' Motion for Summary Judgment (Filing No. 62) is **GRANTED**.

Final Judgment shall issue separately.

**SO ORDERED.**

Date:   6/11/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

ISRAEL DODD RICHARDSON
235 South East Cherokee Drive
North Vernon, IN 47265

Amy Stewart Johnson
Frost Brown Todd LLP
asjohnson@fbtlaw.com

Barry F. McGinley
Frost Brown Todd LLP
bmcginley@fbtlaw.com