UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ISRAEL DODD RICHARDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-cv-00188-TWP-KMB |
| | ) |
| KENNY FREEMAN Sheriff Jennings County IN, | ) |
| CODY LOW Deputy Sheriff Jennings County IN, | ) |
| KYLE LEE Deputy Sheriff Jennings County IN, | ) |
| individually and in their official capacities, | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

This matter is before the Court on *pro se* Plaintiff Israel Dodd Richardson's ("Richardson") post-judgment Motion to Alter or Amend a Judgment (Dkt. 69). Richardson initiated this action against Defendants Kenny Freeman ("Sheriff Freeman"), Cody Low ("Deputy Low"), and Kyle Lee ("Deputy Lee") (collectively, "Defendants") in their individual and official capacities alleging excessive use of force, failure to train, and failure to intervene in violation of his Fourth Amendment rights (Dkt. 34). On June 11, 2025, the Court granted Defendants' summary judgment motion, (Dkt. 67), and entered final judgment against Richardson (Dkt. 68). For the reasons explained in this Order, Richardson's post-judgment Motion is **denied**.

### I. BACKGROUND

A complete recitation of the facts of the case as that can be found in the Court's Order Granting Defendants' Motion for Summary Judgment (Dkt. 67). In this Order, the Court recites only facts pertinent to the instant Motion.

As of March 5, 2022,[1] Richardson had several active warrants out for his arrest (Dkt. 63-1 at 16:20– 17:14). On March 5, 2022, Deputy Low and Deputy Lee, officers with the Jennings County Sheriff's Office ("JCSO"), were notified by a narcotics detective that a hatchback Ford Focus driven by Richardson was headed northbound on State Road 3 in Jennings County, Indiana (Dkt. 63-2 at 3, Dkt. 63-3 at 3). Both officers were made aware that Richardson had multiple warrants for his arrest. *Id*. Deputy Lee's dash camara was activated.[2] Deputy Low and Deputy Lee positioned their cars across from the location where Richardson was observed so that they would encounter Richardson's vehicle. *Id*. At approximately 2:32 p.m., Richardson's vehicle pulled into the location, and Deputy Low and Deputy Lee pulled behind Richardson's vehicle. *Id*.

Deputy Low, a handler for canine partner Axel, activated his emergency lights to initiate a traffic stop of Richardson's vehicle. *Id*. Richardson came to a stop, but as Deputy Low exited his vehicle, Richardson fled in his car, and a vehicle pursuit began. *Id*.

Deputy Low and Deputy Lee began pursuing Richardson as he fled (Dkt. 66-A2 at 1:02). Sheriff Freeman joined the pursuit (Dkt. 63-2 at 3). During the pursuit, Richardson threw multiple plastic bags out of his window, which Defendants suspected contained narcotics. *Id*. at 1. At least one of the bags was later recovered by Deputy Low, and the substance inside tested positive for methamphetamine. *Id*. at 3, 10. During the ensuing six-mile, high-speed pursuit on a hilly road, Richardson ran a stop sign, traveled at approximately fifty to sixty miles per hour, and crossed the center line multiple times. *Id*. at 3. After approximately five minutes of pursuit, Richardson stopped

---

[1] Deputy Low's sworn declaration states that the events at issue occurred on March 5, 2023. However, this appears to be a typo, as the body camera footage indicates these events occurred on March 5, 2022. *See also State of Indiana v. Israel Dodd Richardson*, 40C01-2203-F5-000010 (Ind. Super. Mar. 7, 2022).

[2] Defendants manually filed five .mp4 files containing dash camera and body camera footage (two Exhibit As, and Exhibits B, C, and D) (Filing No. 66). The Court refers to Deputy Low's body camera footage as Filing No. 66-A1; Deputy Lee's dash camera footage as Filing Nos. 66-A2, 66-B, and 66-C; and Deputy Lee's body camera footage as Filing No. 66-D.

his vehicle on a country road beside a field (Dkt. 66-B at 2:50–56). Deputy Low and Deputy Lee's body cameras were activated. Defendants, each in their own police vehicles, surrounded Richardson's car. *Id*. at 2:56–3:00. Deputy Low, who was parked directly in front of Richardson's car, exited his vehicle with his canine partner, Axel. *Id*. at 2:59–3:01. Sheriff Freeman also exited his vehicle with an assault-style weapon drawn and aimed at Richardson (Dkt. 34 at 3). Deputy Low drew his firearm, and he and Axel approached the driver's side of Richardson's vehicle (Dkt. 66-C at 0:00–0:05). Deputy Low loudly commanded Richardson to put his hands up where Deputy Low could see them (Dkt. 63-2 at 4). Richardson did not comply. *Id*.

Deputy Low commanded Richardson to turn off the vehicle and Richardson complied. *Id*. Richardson then lowered his left hand to roll down the window (Dkt. 63-1 at 39:20–40:2). Because Richardson had multiple outstanding warrants, led officers on a pursuit for over five minutes, threw bags of suspected narcotics out of his window, and acted erratically, Deputy Low was concerned that Richardson might be armed with or within reach of a deadly weapon (Dkt. 63-2 at 4). Deputy Low loudly informed Richardson five times that if Richardson did not comply with the commands to keep his hands up, Deputy Low would release Axel. *Id*. But Richardson did not hear the commands (Dkt. 63-1 at 31:22–32:1).

Deputy Lee reached through the passenger's side of the vehicle and grabbed Richardson's right arm to pull him out of the vehicle (Dkt. 63-2 at 4). Richardson testified that Deputy Lee grabbed both of his arms, but that testimony is refuted by the video footage (Dkt. 63-1 at 19:13–14, Dkt. 66-C at 0:28–0:35). Richardson lowered his left arm again from the steering wheel where he had been keeping it (Dkt. 63-2 at 4). Because the driver's side door was inoperable, Richardson began to crawl across the seat to exit out of the passenger's side door (Dkt. 34 at 3). Deputy Low did not know the purpose of Richardson lowering his left arm, and he feared Richardson might be

3

reaching for a weapon (Dkt. 63-2 at 4). Deputy Low lifted Axel and deployed him through the driver's side window to assist in detaining Richardson. *Id*. Axel engaged Richardson on his back for approximately nine seconds until Deputy Low commanded Axel to release his bite, as Deputy Low believed Deputy Lee had gained control of Richardson's arm. Neither Deputy Low nor Axel had any further physical contact with Richardson *Id*.

Deputy Lee did not have control of Richardson (Dkt. 66-C at 0:32–0:41). Once Richardson was out of the vehicle, Deputy Lee attempted to place him in handcuffs, commanding Richardson to "stop" and "give me your f[******] arm." (Dkt. 66-D at 0:09–0:20). Richardson replied "okay" and "you got it," but the video shows Richardson pulling his left arm away from Deputy Lee, placing his right hand on the ground, and using his right hand to push himself off the ground and stand up. *Id*. at 0:09–0:23. When Richardson stood up, Sheriff Freeman began assisting Deputy Lee in gaining control of Richardson, and both officers shoved Richardson to the ground. *Id*. at 0:20–0:25. Deputy Lee then yelled to Richardson, "give me your hand!" to which Richardson said "here," but continued pulling his arm away. *Id*. at 0:30–0:36. Richardson then pulled his arm to the front of his body and yelled "he's biting me again," referring to Axel. *Id*. at 0:33–0:38. The video footage shows that Axel was not biting Richardson at that time. *Id*.

Deputy Low and Sheriff Freeman told Richardson to roll onto his stomach so they could place him in handcuffs, and Richardson complied. *Id*. at 0:43–0:50. After Richardson was handcuffed, Deputy Low held onto Richardson's arm and pulled him into a sitting position. *Id*. at 1:00–1:04.

Richardson filed his Amended Complaint on April 29, 2024 (Dkt. 34). Defendants filed their Motion for Summary Judgment on September 11, 2024 (Dkt. 62). Richardson never responded to the Motion for Summary Judgment and the Court granted the Motion on June 11,

4

2025 (Dkt. 67). The Court then entered final judgment in favor of Defendants and terminated this action (Dkt. 68). Less than a month later, on July 3, 2025, Richardson filed the instant Motion asking the Court alter or amend its Order Granting Defendants' Motion for Summary Judgment and relieve him from its Final Judgment Order (Dkt. 69).

## II.    LEGAL STANDARD

Richardson moves for the Court to alter or amend its Order Granting Defendants' Motion for Summary Judgment under Rule 59(e) and for the Court to relieve him from its Final Judgment Order under 60(b)(1) and (3).

A motion to alter or amend under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). If timely filed, a motion styled as a motion to reconsider should be considered under Rule 59(e). *Kiswani v. Phoenix Sec. Agency, Inc.*, 584 F.3d 741, 742 (7th Cir. 2009). The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the Court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989). "A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). Relief pursuant to a Rule 59(e) motion to alter or amend is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). A Rule 59(e) motion may be used "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v.*

*Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted). Furthermore, "a Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, at *7 (S.D. Ind. Mar. 24, 2009).

> Rule 60(b) authorizes a court to grant relief from a judgment on six grounds:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party ; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). Rule 60(b) relief is "an extraordinary remedy that is to be granted only in exceptional circumstances," and motions "'must be shaped to the specific grounds for modification or reversal found in 60(b)—they cannot be general pleas for relief.'" *Forrest v. Corr. Corp. of Am.*, No. 1:05-cv-1797, 2008 U.S. Dist. LEXIS 24286, at *3–4 (S.D. Ind. Mar. 26, 2008) (citing *Talano v. Northwestern Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001), and quoting *Provident Savings Bank v. Popovich*, 71 F.3d 696, 698 (7th Cir. 1995) and *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992)).

### III.   DISCUSSION

As discussed above, Richardson requests the Court alter or amend its Order Granting Defendants' Motion for Summary Judgment under both Rule 59(e) and 60(b) (Dkt. 69 at 1). The Court will address his Motion under each Rule in turn.

**A.   Rule 59(e)**

Richardson does not present any new evidence. Rather, he disputes the Court's determination of the facts. Richardson argues that the Court was mistaken on the following facts:

6

(1) no bags containing methamphetamine were recovered; (2) Richardson never exceeded the posted speed limit of thirty-five miles per hour; (3) Deputy Low released Axel from his vehicle immediately without any warning; and (4) Richardson surrendered and complied with all commands (Dkt. 69 at 3). Richardson then contends that the Court committed a mistake of law because this case is closely akin to *Alicea v. Thomas*, 815 F.3d 283 (7th Cir. 2016). Richardson is wrong.

First, while Richardson disputes the above facts, the record clearly shows that he is incorrect. The evidence shows that at least one of the suspected narcotics bags was recovered and the substance inside tested positive for methamphetamine (Dkt. 63-2 at 3, 10). Whether Richardson exceeded the posted speed limit when leading officers on a chase through county roads is irrelevant. Finally, as the Court stated in its Order Granting Defendants' Motion for Summary Judgment, the video evidence clearly refutes Richardson's claims that Deputy Low released Axel immediately upon exiting his vehicle and that Richardson complied with all commands. Accordingly, the Court did not commit a manifest mistake of fact.

Second, in *Alicea*, the Seventh Circuit overturned a district court's granting of summary judgment in favor of an officer who commanded his canine partner to attack a suspect who was "standing still, arms raised, inside of an empty above-ground pool, surrounded by five foot walls[,]" and who was not in active flight when he was discovered. *Id*. at 289. The Seventh Circuit reasoned that "[t]he sole fact a suspect has resisted arrest before cannot justify disregarding his surrender in deciding whether and how to use force." *Id*.

This case is not akin to *Alicea*. Richardson led multiple police vehicles on a high-speed chase on county roads, threw suspected contraband out of his windows during the chase, and never presented his hands to officers but rather, reached down out of view of the officers during the arrest

and then continued to actively resist officers. Thus, the force used by the Defendants in this case was reasonable and entirely exclusive of whether Richardson had resisted arrest in the past. Accordingly, because there is no new evidence and the Court did not commit a manifest error of law or fact, Richardson's Motion is **denied** under Rule 59(e).

B.      Rule 60(b)

Richardson also moves under Rule 60(b)(1) and (3) claiming excusable neglect and misrepresentation of evidence by the Defendants. Concerning excusable neglect, Defendants filed their summary judgment motion on September 11, 2024 (Dkt. 62). As required by the Local Rules, Defendants' counsel filed a Notice Regarding Right to Respond and Submit Evidence to Motion for Summary Judgment. (Dkt. 65). The Notice explained that " You must file and serve a copy of your response to the motion for summary judgment by October 9, 2024, or by other such date ordered by the court. If you need more time to respond." *Id*. The deadline passed and Richardson never filed a response nor did he request more time to respond. Several months later, on June 11, 2025 the Court ruled on Defendants summary judgment motion. (Dkts. 67, 68). Richardson's claimed reason for failing to file a response is "[u]pon release from Breckenridge County [Jail] I was barred from obtaining an Indiana real I.D. or Driver's license" and he was denied access to e-file documents, and because he didn't have an Indiana driver's license or identification, he was unable to enter a courthouse for the purpose of filing in person (Dkt. 69 at 2). This is not excusable neglect.

First, Richardson was not denied access to e-file documents. Rather, he was denied the ability to e-file documents by *emailing* them to the Court (Dkt. 59 at 1). Back in August of 2024, his request for permission to e-file documents via email was denied, and Richardson was directed to comply with the local rules and continue to submit his filings directly with the Clerk. *Id*. (citing

8

S.D. Ind. L.R. 5-2(b)(1)). *Pro se* litigants are also allowed to submit paper filings, *see* S.D. Ind. L.R. 5-2(b)(1), which Richardson was aware of as he has consistently submitted filings by mail up to and beyond Defendants' summary judgment motion.

Richardson's allegation that Defendants misrepresented the evidence also fails. Richardson argues the Defendants withheld use of force reports and only produced them after his summary judgment response deadline, "making it impossible to present [his] case so as to get a fair decision." (Dkt. 69 at 2). However, Defendants filed their Notice of Compliance and affirmed to the Court that they produced all use of force reports (*see* Dkt. 49). Defendants also attached to their Response to the instant Motion a copy of the email they sent to Richardson containing those documents (Dkt. 70-1). The attachment indicates that the email was sent on August 12, 2024, approximately one month before the Defendants filed their summary judgment motion and the Court has no reason to believe the attached email was fabricated. *Id*.

Moreover, even if Richardson was correct that the Defendants failed to send prior use of force reports to him, the outcome of the Court's decision would have been the same. This is because the Court's decision was reached exclusively on the facts concerning this incident. In determining whether the Defendants used excessive force, the Court focused solely on the actions surrounding Richardson's arrest in this incident, not on prior uses of force. Accordingly, Richardson has failed to demonstrate either excusable neglect or that Defendants misrepresented the evidence. His Rule 60(b) motion is therefore **denied**.

## IV.    CONCLUSION

For the reasons stated above, Richardson's Motion to Alter or Amend a Judgment (Dkt. 69) is **DENIED**. The Court declines to alter or amend its Order Granting Defendants' Motion for

Summary Judgment under Rule 59(e) and declines to relieve Richardson from its Final Judgment Order under Rule 60(b).

**SO ORDERED**.

Date: 3/3/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

ISRAEL DODD RICHARDSON
235 South East Cherokee Drive
North Vernon, IN 47265

Peyton Blaize Hiatt
FBT Gibbons LLP
bhiatt@fbtgibbons.com

Amy Stewart Johnson
FBT Gibbons LLP
asjohnson@fbtgibbons.com